JOHN MANACEK *vs.* GEORGE MCLACHLAN HAT COMPANY ET AL.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued June 10th—decided July 10th, 1936.

*Philo C. Calhoun,* for the appellants (defendants).

*Philip Reich,* with whom, on the brief, was *Samuel Reich,* for the appellee (plaintiff).

AVERY, J. On September 21st, 1932, after hearings, the claimant was awarded compensation to commence as of December 10th, 1931, for disability due to mer-

curial poisoning arising out of and in the course of his employment as a hatter. The claimant was treated by his attending physician until the middle of October, 1932, when he was discharged as able to return to work although there were still some symptoms of mercurial poisoning present. Compensation was paid to the claimant by the respondents in accordance with the award until October 22d, 1932. On the following day, he was taken to the Danbury Hospital in a semi-comatose condition suffering from paralysis of the right arm and leg, and he is still disabled from working because of hemiplegia of the right side.

The present controversy arises from his claim for further compensation for disability after October 22d, 1932. Hearings were had before the commissioner and an award made in favor of the claimant, from which the respondent appealed to the Superior Court where the action of the commissioner was affirmed and the appeal dismissed. From the decision of the Superior Court, the respondent has appealed to this court. In its appeal, the respondent has asked for the correction of the commissioner's finding by the addition thereto of certain subordinate facts claimed to have been established by the testimony of the respondents' witnesses, and by striking therefrom certain subordinate facts as found which the respondent claims are not supported by the evidence. An examination of the evidence, however, discloses that no correction of the finding is permissible by which the position of the respondent will be materially improved. The real controversy between the parties was a medical question as to whether or not the hemiplegia from which the claimant admittedly was suffering and by which he admittedly was incapacitated, resulted from mercurial poisoning arising out of and in the course of his em-

ployment as a hatter or was due to a congenital aneurysm as asserted by the respondent.

From the finding, it appears that for many years the principal industry of Danbury, where the respondent's plant is located, has been the manufacture of hats, and the respondent's plant is one of several devoted to that industry. The processes of manufacture are such that workmen are often exposed to mercurial fumes, and mercurial poisoning is a frequent result therefrom. While a general paralysis resulting from mercurial poisoning is very rare, it has been known to have occurred. There is no objective sign to distinguish a ruptured blood vessel resulting from aneurysm and a ruptured blood vessel resulting from mercury. An aneurysm in a man of thirty-eight years of age is also very rare.

Upon the hearings before the commissioner, the claimant offered evidence of two doctors; the respondent that of three. One of the physicians called by the claimant had been practicing in Danbury since 1914, and had much experience in cases of mercurial poisoning. He had attended and observed the claimant over a long period of time. He testified that in his opinion the hemiplegia was probably due to mercury. He felt that way in view of the fact that everything else had been eliminated; and that there was nothing about the man's physical condition to cause a hemiplegia. The other physician called by the claimant was Dr. Brown, who had been practicing in Danbury for forty-eight years, and he stated that from his examination of the claimant and his experience with mercurial poisoning the hemiplegia was due to mercurial poisoning; and, in the course of his testimony, discussed numerous medical authorities bearing upon the subject. On the other hand, the physicians called by the respondent, although apparently having had less experience in

cases of mercurial poisoning than those called by the claimant, while admitting that claimant's condition possibly might be caused thereby, thought it more probable that it was due to congenital aneurysm. They based their opinions upon the fact that they had found in the medical authorities no authentic cases referred to where a paralysis of the type from which the claimant was suffering arose from mercurial poisoning.

The ultimate conclusion of the commissioner is supported by the opinion of qualified experts who stated plainly and definitely that in their professional opinion mercurial poisoning was the superinducing cause of the claimant's disability. Although the case is an unusual one, we cannot say that the evidence of these physicians was such that a rational mind could not believe it. It follows that the decision of the commissioner was one based upon conflicting medical testimony with which we do not interfere. *Tippman* v. *State*, 119 Conn. 1, 174 Atl. 296; *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 451, 161 Atl. 860; *Jadovich* v. *Collins Co.*, 109 Conn. 62, 66, 145 Atl. 25; *Bailey* v. *Mitchell*, 113 Conn. 721, 724, 156 Atl. 856; *Kosik* v. *Manchester Construction Co.*, 106 Conn. 107, 136 Atl. 870; *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 299, 114 Atl. 109.

There is no error.

In this opinion the other judges concurred.